UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JONATHAN O.,

    **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 3:19-cv-19811
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jonathan O. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On July 28, 2016, Plaintiff filed his current application for benefits, alleging that he has been disabled since October 1, 2007, when he was 14 years and 9 months old. R. 81, 94, 173–

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

1

81.[2] The application was denied initially and upon reconsideration. R. 108−12, 116−18. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 119−21. Administrative Law Judge ("ALJ") Douglass Alvarado held a hearing on November 6, 2018, at which Plaintiff, who was represented by counsel, testified, as did Plaintiff's mother and a vocational expert. R. 32−80. In a decision dated December 17, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. R. 15−27. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 8, 2019. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 24, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 18.[3] On that same day, the case was reassigned to the undersigned. ECF No. 19. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[2] Plaintiff previously filed an application for Supplemental Security Income on July 17, 2014, which was denied at the initial level of administrative review on December 9, 2014. R. 82, 190. The administrative law judge denied Plaintiff's request to reopen that previous application. R. 15, 261−63.

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court

"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong

5

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

      **B.**      **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 23 years old on the date on which the current application was filed. R. 26. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 28, 2016, that application date, and the date of the decision. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: depression, panic disorder with agoraphobia, and anxiety disorder. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17–19.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain non-exertional limitations. R. 19–26. Plaintiff has no past relevant work. R. 26.

At step five, the ALJ found that a significant number of jobs—*i.e*., approximately 75,926 jobs as a laundry worker; approximately 276,506 jobs as a kitchen helper; and

approximately 12,259 jobs as a mail clerk–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 26–27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act since July 28, 2016, the date on which the current application was filed, through the date of that administrative decision. R. 27.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 17. The Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 16.

**IV.   DISCUSSION**

Plaintiff raises a number of challenges to the ALJ's decision, including, *inter alia*, his assertion that the ALJ failed to properly consider certain nonexertional limitations found by the state agency reviewing physicians and to whose opinions he afforded "partial weight." *Plaintiff's Memorandum of Law*, ECF No. 11, p. 16; *Plaintiff's Reply Brief*, ECF No. 17, pp. 5–7. This failure, Plaintiff argues, resulted in a RFC that is not supported by substantial evidence. *Id*. This Court agrees.

A claimant's RFC is the most that a claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler*

*v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ must consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In making his findings, an ALJ must evaluate all record evidence. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704−05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705−06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett v.*

*Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter*, 642 F.2d at 705). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In addition, the Court notes that state agency physicians are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x

10

917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

Here, at step four of the sequential evaluation, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain nonexertional limitations:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to understand, remember and carry out simple instructions with only occasional changes to essential job functions; is able to make simple work-related decisions; can occasionally interact with supervisors and coworkers but cannot work on a team or in tandem with coworkers; can never interact with the public; and is able to work in an environment where productivity is judged at the end of the day rather than the middle of the day.

R. 19.

Here, Russell Phillips, Ph.D., conducted an initial review of Plaintiff's medical record on behalf of the state agency on December 3, 2016. R. 81–92. Dr. Phillips specifically considered the medical evidence as it appeared in the record at that time, which included, *inter alia*, a November 29, 2016, consultative report from Dr. Christopher Williamson. R. 82; *see also* R. 384–86 (containing Dr. Williamson's report that reflected, *inter alia*, that Plaintiff lives with his parents; that Plaintiff reported that "he has had a hard time getting out of his house in order to keep" his psychiatric appointments; "he has difficulty leaving his room due to his anxiety"; he "reports daily panic attacks"; Dr. Williamson's diagnoses included, *inter alia*, panic disorder; social anxiety disorder; major depressive disorder, recurrent; history of learning disability; Dr. Williamson opinion that Plaintiff's "overall prognosis remains guarded due to the chronicity of his current symptom presentation"). Dr. Phillips also considered May 2016 records from CPC

Behavioral Healthcare, Inc. ("CPC"), which reflected a history of social anxiety, panic, and depressive symptoms and which noted Plaintiff's reported extreme fear of leaving the house, R. 86. Dr. Phillips found that Plaintiff had moderate limitations in his ability to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances, in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 89–90. According to Dr. Phillips, Plaintiff could maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision. R. 90. Under the heading entitled "MRFC – Additional Explanation[,]" Dr. Phillips continued:

> This 23 year-old male alleges disability due to psychiatric problems. He has been treated in the past for anxiety, and had a childhood diagnosis of oppositional defiant disorder. He takes an antianxiety medication prescribed by his PCP, but currently has no mental health care otherwise. The mental CE diagnosed anxiety and depression. *The claimant is severely limited in getting out of the house*, but otherwise his mental control is adequate, as reflected in the MRFC above.
>
> The claimant has not continued with prescribed psychiatric treatment, which has been helpful in the past according to the old psychiatry records.
>
> Despite his anxiety and depression, when adhering to prescribed treatment (POMS DI 23010.005A 1, 2) the claimant is able to persist at simple tasks over time under ordinary conditions.

R. 90–91 (emphasis added). In short, Dr. Phillips concluded that Plaintiff was not disabled. R. 91.

Robert Campion, M.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on February 14, 2017. R. 94–104. Dr. Campion specifically considered, *inter alia*, records from CPC and Dr. Williamson. R. 96. Dr. Campion agreed with Dr. Phillips that Plaintiff had moderate limitations in his ability to perform activities within a schedule, to maintain regular

attendance, and to be punctual within customary tolerances and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 101. Dr. Campion also agreed with Dr. Phillips that Plaintiff could maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision. *Id.* Dr. Campion further agreed with Dr. Phillips' opinion contained in the "MRFC – Additional Explanation[,]" including the opinion that Plaintiff "*is severely limited in getting out of the house*, but otherwise his mental control is adequate[.]" R. 102 (emphasis added). Dr. Campion agreed that Plaintiff was not disabled. R. 103.

In his written decision, the ALJ assigned "partial weight" to the findings of Dr. Phillips and Dr. Campion, reasoning as follows:

> On December 3, 2016, DDS consultant Dr. Phillips opined that the claimant has no limitations in understanding and memory, and moderate limitations in sustaining concentration and persistence, social interaction and adaptation: but can maintain attention for two hours at a time and persist at simple tasks over 8 and 40 hours periods with normal supervision, can tolerate minimum social demands of simple-task settings, but would not be able to tolerate sustained contact with the general public and is able to persist at simple tasks over time under ordinary conditions (Exhibit 1A). DDS consultant Dr. Campion concurred on reconsideration of February 14, 2017 (Exhibit 3A). These opinions by non-examining DDS consultants who have program knowledge are partially consistent with the medical evidence of record. However, I find that the record supports a finding of moderate limitations in understanding and memory and marked limitations in social interaction. Therefore, I accord these opinions partial weight.

R. 25.

Plaintiff challenges the ALJ's summary of the findings of these reviewing state agency consultants and the weight assigned to these opinions, arguing that the ALJ failed to address their opinions that Plaintiff is "severely limited in getting out of the house" and moderately limited in his abilities to perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerances and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Plaintiff's Memorandum of Law*, ECF No. 11, p. 16; *Plaintiff's Reply Brief*, ECF No. 17, pp. 5–7. Plaintiff contends that these limitations are supported by record evidence and affect Plaintiff's time off-task and absence from work, which are not addressed in the current RFC. *Id*. Plaintiff goes on to argue that the ALJ's failure to include these limitations in the RFC, and the failure to explain this omission, as well as his failure to explain which portions of the reviewing state agency consultants' opinions he credited and which he rejected when assigning "partial weight" to those opinions, preclude judicial review. *Id*. In response, the Commissioner insists that the ALJ "found Plaintiff had more severe limitations than they [the reviewing state agency consultants] found" because "while those doctors opined that Plaintiff had no limitations in understanding and memory, the ALJ found that Plaintiff had a moderate limitation in this area and a marked limitation in social interaction[.]" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, p. 16.

Plaintiff's arguments are well taken. As set forth above, the state agency reviewing consultants opined that Plaintiff was "severely limited in getting out of the house" and moderately limited in his abilities to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 89–91, 101, 103. The ALJ assigned "partial weight" to his own abbreviated summary of these consultants' opinions, R. 25, which "suggests some degree of weight to one part, and rejecting or granting a lesser degree of weight to another." *Wheeler v. Saul*, No. 18-1709, 2020 WL 516366, at *2

(W.D. Pa. Jan. 31, 2020) (remanding action where the ALJ appeared to assign weight to a treating physician's opined restriction but omitted that restriction from the RFC and failed to explain his reasoning for the omission). However, as Plaintiff observes, the ALJ never acknowledged those portions of these opinions that addressed limitations related to Plaintiff's ability to leave his home, attendance, punctuality, and completion of a normal workday and workweek, nor does the RFC found by the ALJ contain any accommodations for these limitations, such as time off-task or absences from work. R. 19, 25. Although an ALJ is free to weigh the medical opinions in the record and to determine whether to credit those opinions, the ALJ must nevertheless explain his reasoning in that regard. *Cotter*, 642 F.2d at 704–05; *Fargnoli,* 247 F.3d at 42; *Morales*, 225 F.3d at 317; *see also Jones,* 364 F.3d at 505 (providing that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"). Similarly, the ALJ may not reject evidence for no reason or the wrong reason. *Sutherland*, 785 F. App'x at 928. Without an explanation as to what weight he gave the reviewing state agency consultants' opinions in this regard and why he implicitly rejected such restrictions, coupled with the ALJ's failure to clarify those portions of the opinions he credited and those portions that he rejected, the Court cannot conclude that substantial evidence supports the ALJ's findings. *Cotter*, 642 F.2d at 704–05; *Fargnoli,* 247 F.3d at 42; *Morales*, 225 F.3d at 317; *Sutherland*, 785 F. App'x at 928.

      The ALJ's failure to include limitations relating to Plaintiff's severe limitations in leaving his house and moderate limitations in his abilities to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods—

combined with the ALJ's failure to explain such omissions, R. 19, 25—cannot be viewed as harmless. *See Senyzsyn v. Saul*, No. CV 18-4046, 2019 WL 3252950, at *8–9 (E.D. Pa. July 19, 2019) (remanding action where "each of these sources supports the conclusion that Plaintiff has some degree of difficulty leaving his home on a consistent basis" and "the ALJ's omission of any reference to this evidence constituted error" as "resolution of this issue is crucial in light of vocational testimony that a person would be unable to sustain employment if they missed as many as four full days per month from full-time work, and that the ability to go to work on a regular basis is the requirement of any job"); *Lewis v. Colvin*, No. CIV-15-584-F, 2016 WL 7396075, at *11 (W.D. Okla. Dec. 5, 2016), *report and recommendation adopted*, No. CIV-15-584-F, 2016 WL 7404673 (W.D. Okla. Dec. 21, 2016) ("But despite the overwhelming evidence of Plaintiff's social phobia/agoraphobia and concrete examples of how the impairment has affected Plaintiff's life, the ALJ failed to adequately discuss the impairment or explain its impact on Plaintiff's ability to consistently work. Accordingly, the Court should conclude that the RFC, lacks substantial evidence."). These omissions and this failure to explain take on even greater significance when one considers that the vocational expert, upon whose testimony the ALJ relied, R. 26–27, testified that there would be no work in the national economy for a hypothetical individual who (1) would be off-task fifteen percent or more of the workday, or (2) would be absent from work two or more days per month, or (3) would need to leave work early or would arrive late at work by thirty minutes per incident four times per month. R. 76–77.

      The Commissioner contends that the ALJ did not err in failing to address limitations in Plaintiff's ability to leave his the house, arguing, *inter alia*, that Plaintiff testified that he worked outside of his home two days a week, presented to his treating psychiatrist's office on a regular basis for appointments, and did not complain to his psychiatrist of an inability to leave the house.

*Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, pp. 17–18. However, the ALJ did not rely on this rationale in according only "partial weight" to the state agency reviewing consultants' opinions. R. 25. The Court must therefore reject the Commissioner's *post hoc* rationalization in this regard. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

Accordingly, considering this omission and the ALJ's failure to explain this omission, this Court cannot conclude that substantial evidence supports the ALJ's weighing of the state agency reviewing consultants' opinions and the RFC finding. *See Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). This Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J.

Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of this issue.[4]

## V.     CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 11, 2021                                *s/Norah McCann King*
                                                      NORAH McCANN KING
                                                      UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the state agency reviewing consultants' opinions and the RFC, the Court does not consider those claims.